U.S. Congressman Robert K. DORNAN, et al., Plaintiffs,

v.

U.S. SECRETARY OF DEFENSE, U.S. Secretary of State, Director, Central Intelligence Agency, Ronald W. Reagan, Defendants.

Civ. A. No. 87–1414.

United States District Court, District of Columbia.

Nov. 20, 1987.

Carl L. Shipley, Marion H. Smoak, Washington, D.C., for plaintiffs.

David J. Anderson, Vincent M. Garvey, Richard C. Stearns, Civil Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a sincere but misdirected declaratory judgment suit seeking a constitutional decision relating to the role of Congress and the President in a current foreign policy dispute. Sixteen congressmen, a Senator and fifteen Members of the House of Representatives, have sued President Reagan and key members of his Cabinet, in their official capacities, requesting the Court to declare that Congress is unconstitutionally constraining the President from carrying out his announced policy to support the contras in Nicaragua[1]. The complaint recites the authority of the President to guide American foreign policy and points to his duty to implement that policy, as well as treaties and laws deemed consistent with his decision to aid the contras. Actions of the Congress that reflect rejection or disagreement with aspects of the President's contra initiative are alleged to be unconstitutional in that they frustrate foreign policy powers of the President in disregard of article II of the Constitution which specifies the President shall faithfully execute the laws and conduct foreign affairs. U.S. Const., art. II, § 1, cl. 8 and § 2, cl. 1 & cl. 2.

The President and members of his Cabinet who have been sued oppose this action by a Motion to Dismiss, which has been fully briefed and argued. The motion must be granted and the complaint dismissed because the complaint completely fails to allege a justiciable controversy.

Plaintiffs contend they have the right as individual congressmen to seek an order from the Court that would declare the President in violation of the Constitution because he allegedly has abdicated his foreign affairs responsibilities by submitting to unconstitutional laws and because he has failed to keep his official and political promise to lend this country's full support to the anti-Sandinista resistance fighters.

Federal courts cannot pronounce upon the constitutionality of every government action someone desires to question. They may adjudicate only the legal rights of litigants in actual controversies. The "Case" and "Controversy" language of article III presents a threshold, jurisdictional issue the Court must decide before the merits of any questioned action can be reached. Whether the relief requested in a complaint is equitable or monetary, the Supreme Court has repeatedly noted that article III requires that a plaintiff bringing suit must first establish a genuine "personal stake" in the outcome of a controversy before a federal court may consider exercising its judicial power. There are two essential elements of this concept of a "personal stake," or so-called standing requirement: the plaintiff must have suffered or be threatened with some "distinct and palpable injury," *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), and there must be some causal connection between the plaintiff's asserted injury and the defendant's challenged action. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). In addition, the "palpable injury" alleged by a plaintiff must be "likely to be redressed if the requested relief is granted." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206).

"Palpable injury" is a term of art and "we must look to experience to find [its] meaning." *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 152, 71 S.Ct. 624, 638, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). In this concurrence the Justice noted two sources which must be examined in determining whether an alleged injury satisfies the jurisdictional requirements of article III in a suit brought against the government: Either a litigant must "challenge a governmental action of a sort that, if taken by a private person, would create a right of

---

1. The Court has taken judicial notice of that policy as explicated in material filed by plaintiffs on November 6, 1987 requesting that such notice be taken.

action cognizable by the courts," [2] or the plaintiff's claim must "be based on an interest created by the Constitution or a statute." *Id.* Congressmen, individually or as a group, are subject to the requirements of article III just like any other plaintiff in federal court. *See Harrington v. Bush,* 553 F.2d 190, 204–05 (D.C.Cir.1977).

■ In the present case the congressmen suing the President and cabinet officers mistakenly contend they are unlike ordinary citizens and appear to assume they have the right to sue whenever they object to how the government is being run. Conscious of established precedent, they attempt to assert two distinct and "palpable injuries" to legal rights which they claim are guaranteed them as members of Congress under article I: first, they claim they are being deprived of their "rights to be consulted and to vote on compliance with treaty obligations" as well as "their ability to participate in the internal processes of Congress and to advance legislative proposals for their constituents affecting the nation's commitment to the Nicaraguan democratic resistance forces"; and, secondly, they claim that "the effectiveness" of their votes and the use of their votes "to support the national commitment to the democratic resistance" have been nullified. Amended Complaint, paras. 11–13.

Much as they protest, these are not "palpable injuries" to the legal interests of any of the sixteen members of Congress which by even the greatest stretch of imagination are protected by the Constitution. The Constitution protects only certain specific legal interests of congressmen as legislators. Plaintiffs have not and cannot allege in an identifiable manner any actual nullification of a specific right to act as a congressman or any deprivation of an opportunity to vote as an individual legislator on any issues arising in the Congress which have been caused by Executive action. The congressional injury recognized in *Kennedy v. Sampson,* 511 F.2d 430 (D.C.

Cir.1974), as constituting "palpable injury" was wholly different for in that instance the will of the Congress as a whole was being opposed by the President. Nor have they pointed to a specific legal interest protected by any provision of the Constitution or vested in them either as individuals or members of Congress which has been violated by the President. Their alleged injury is wholly ephemeral and cannot be objectively judged.

■ The congressmen merely plead a diminution in their individual effectiveness as legislators based on their own subjective views as to what should be done. Laws have been duly enacted to restrain the President's announced contra policy. Given these circumstances, the Constitution does not protect the interest of those legislators who favor a foreign policy, inconsistent with congressional legislation, which they personally find attractive. The wishes of the majority of their colleagues must control. Nor does the Constitution extend judicial power by enabling courts to review the President's actions in responding, albeit grudgingly, to congressional action simply because legislators such as plaintiff profess to have doubts that the President is making the proper accommodation to congressional action.

Plaintiffs' claim, therefore, amounts to no more than a generalized grievance such as that shared by some other citizens who feel President Reagan should be allowed more fully to commit our Nation to paramilitary support of the contras. As members of Congress they remain free to debate the President's conduct, to voice their support of the contras on the floors of the House or Senate and to propose and vote on legislation committing this Nation's resources to the contra cause—all of which they have done and continue to do. Plaintiffs have simply failed to persuade their colleagues to their point of view and under our system of government they must live with the result. No "palpable injury" to a legal "interest protected in analogous situations at

---

**2.** In determining the kinds of injuries that might be recognized under private law actions as a basis for suits against the Government, Justice Frankfurter looked to common law principles. *McGrath,* 341 U.S. at 152–153, 157–160, 71 S.Ct. at 638, 641–642.

common law, by statute, or by the Constitution" has been alleged. *McGrath*, 341 U.S. at 159, 71 S.Ct. at 642. Thus, there is no justiciable case or controversy presented.

Beyond this lack of "palpable injury," the lack of a justiciable controversy is even more apparent when the underlying circumstances of this particular litigation are examined. Plaintiffs are volunteers meddling in a dispute between two branches of government, neither of which desires court intervention. The President and his co-defendant Cabinet members, who are the parties plaintiffs seek to help, ask the Court not to interfere.

■ Conversely, while plaintiffs also purport to sue on behalf of Congress as a whole, there is not the slightest indication that Congress presently desires to alter its restraints on the President's freedom to carry out some aspects of his policy in Nicaragua. Congress is not a party to this action and has taken no position authorizing plaintiffs to speak for it. Since Congress has not authorized plaintiffs to speak for it nor indicated that it concurs with plaintiffs' position, plaintiffs may not substitute their personal beliefs for the will of Congress. *See Harrington v. Bush*, 553 F.2d at 199–200 (D.C.Cir.1977). Furthermore, as Justice Powell stated, "[A] dispute between Congress and the President is not ready for judicial review unless and until each branch has taken action asserting its constitutional authority." *Goldwater v. Carter*, 444 U.S. 996, 997, 100 S.Ct. 533, 534, 62 L.Ed.2d 428 (1979) (Powell, J., concurring). Here neither the Congress nor the Chief Executive has taken such action.

A moment of reflection, moreover, will reveal that under our Constitution there is not and cannot be a hard line separating Congress and the President in this or other areas of foreign affairs. *See generally,* L. Henkin, *Foreign Affairs and the Constitution* 89–123 (1972). Congress has explicit legislative power to appropriate, to declare war and to approve or disapprove treaties. The President develops foreign policy and carries it out, but usually must act in a manner consonant with legislative action.

Distinctions between foreign and domestic matters have always been difficult to draw and today are becoming increasingly blurred as domestic trade, tax, monetary and other policies must be developed with an eye to the interrelated, global economy in which we live as well as to domestic conditions.

The complaint not only fails to establish a ripe controversy but it is premised on a mistaken view of how our government was intended to operate and how, in fact, it functions. Under the Constitution, government is fluid, not to be dissected into rigid compartments by judicial decrees. As Justice Jackson admonished in the Steel Seizure case:

"The actual art of governing under our Constitution does not and cannot conform to judicial definitions of the power of any of its branches based on isolated clauses or even single Articles torn from context. While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government."

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). Thus there is nothing presented by the complaint that can be resolved by a federal court, even assuming that the President's contra policy is static, which it is not, as events since this case was argued on November 6, 1987 indicate.

■ The Court lacks the expertise or authority to resolve policy differences regarding the contras which exist between Congress and the White House. There are no guiding standards. Resolution of such differences, which shift and vary, must be left to the traditional governmental process or the ballot box.

Such prudential considerations cause federal courts to stay their hands where they lack a clear constitutional role and their inability to enforce any order emanating from a decision is apparent. In the present situation the Court could not define the precise limitations on congressional authority, nor could it implement any directive

designed to free the President from undue congressional restraint were limitations deemed appropriate. The limits of congressional power in the field of foreign affairs are not precisely defined in the Constitution. Moreover, even the President's role in that area is affected by the thrust of events given the lack of a precise constitutional definition of his power. Our tradition is one of conflict and cooperation between Congress and the Chief Executive. The interplay between these two branches has stood the country well, unaided by judicial intervention. The federal courts neither make nor carry out foreign policy and their involvement in this area should be rare indeed.

This Court is not authorized under article III to accept jurisdiction in this case. There is no ripe case or controversy. Plaintiffs lack standing, having failed to demonstrate an injury to them individually or as a group, and the issues are, for prudential reasons, wholly inappropriate for article III consideration.

Accordingly, defendants' motion to dismiss is granted and plaintiffs' Amended Complaint is dismissed with prejudice. An appropriate Order is filed herewith.